UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LEONARD DEWITT, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 2:11-cv-295-WTL-MJD |
| ) | |
| CORIZON/CORRECTIONAL MEDICAL ) | |
| SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

**Entry Granting Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendants' motion for summary judgment [Dkt. 59] must be **granted.**

## I.  Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Leonard Dewitt ("Dewitt"), an inmate currently in custody at the Indianapolis Re-Entry Educational Facility. The moving defendants are Corizon/Correctional Medical Services, Dr. Mitcheff, Patti Wirth, and Dr. Naveen Rajoli.[1]

Dewitt alleges that he has a serious medical condition and that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.

The defendants seek resolution of Dewitt's claims through the entry of summary judgment. Dewitt has opposed the motion for summary judgment.

---

[1] The claim against Dr. James Stewart was dismissed for failure to state a claim upon which relief can be granted in an Entry issued on August 2, 2013. (docket 91).

## II.  Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

## III.  Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Dewitt as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:

Corizon, Inc., formerly called Correctional Medical Services, Inc. ("Corizon"), is the private company that contracts with the Indiana Department of Correction ("IDOC") to provide medical care to Indiana prisoners. Defendant Patty Wirth is a former Corizon employee and was the administrative assistant at the Plainfield Correctional Facility ("Plainfield"). Defendant Dr. Naveen Rajoli is a treating physician at the Putnamville Correctional Facility ("Putnamville"). Defendant Dr. Michael Mitcheff is the Regional Medical Director for Corizon. Dewitt was first incarcerated from March 20, 2006, through May 9, 2008. After being released, he was incarcerated again in November of 2009.

*Dewitt's First Incarceration*

On March 20, 2006, Dewitt entered the IDOC. On October 8, 2007, Dewitt submitted a Request for Healthcare asking to see the eye doctor to get glasses. Medical staff responded two days later and informed Dewitt that he would be placed on the eye doctor's schedule. The prison optometrist generally comes to the prison once a month, depending on how many offenders are on his list to be seen.

On December 19, 2007, Dewitt submitted another Request for Healthcare stating that there was something very wrong with his left eye, which was blood shot and his sight was like looking through a dirty piece of plastic. He claimed this had lasted for six days. He also reported some eye pain. Medical staff responded the same day by informing him that he would be scheduled to see the eye doctor. On December 27, 2007, Dewitt was examined by the prison eye doctor. The eye doctor checked "within normal limits" regarding health of the eye, but also checked hyperopia (far-sighted), astigmatism, and presbyopia (near-sighted, blurry vision that occurs naturally with age) and ordered eye glasses.

On January 7, 2008, Dewitt was seen in the Chronic Care Clinic for hypertension and asthma. On March 4, 2008, Dewitt was transferred to the Indianapolis Men's Work Release Facility. The purpose of the work release facility is for offenders to return to society and work. Because most of the offenders are gone during the day, there is not a full-time physician on staff at the work release facilities like at other prisons. The prison eye doctors do not visit the work release facilities. Therefore, if Dewitt needed to see the optometrist, he would need to go to the nearest prison when the optometrist was there.

On March 23, 2008, Dewitt submitted a Request for Healthcare stating that in November 2007, his left eye became irritated and blood shot. He claimed the pain and irritation went away

in a few days but then he developed a milky film over his left eye. He claimed he tried to explain it to the prison eye doctor but the doctor gave him glasses and did not do anything about the problem. He claimed there was still something wrong with his vision, like he was looking through dull plastic. Medical staff responded the next day and said they would call Plainfield to try to set up an appointment on May 13. When medical staff called Plainfield, however, Patty Wirth, the administrative assistant in the medical department, informed them that they did not have any appointment times open on May 13 and the next available appointment with the prison eye doctor would be in June. Therefore, Dewitt was scheduled for doctor sick call on March 26, 2008, instead.

Wirth was not a medical provider of any kind and she had no medical training. Her job was administrative. Part of her job was to schedule offenders to see the prison optometrist. As noted, the eye doctor typically came to the prison once a month.

On March 26, 2008, Dr. Richard Tanner examined Dewitt. Dr. Tanner noted that Dewitt previously had conjunctivitis and was still worried about it. He noted that Dewitt was functioning well at the work release facility and did not want to leave. Dr. Tanner noted no obvious abnormalities to the left eye but indicated that they would try to get Dewitt seen by the eye doctor. Dr. Tanner examined Dewitt again in the Chronic Care Clinic on April 16, 2008. In May of 2008, Dewitt was released on parole.

Corizon does not have a policy that offenders do not receive medical care if they are going to be released within three months. If, however, an offender needs a referral to an outside specialist and the offender's condition is not urgent and can safely wait until the offender is released, then that specialty appointment is sometimes not made if the offender has a short time left on his sentence because of continuity of care issues.

*Outside of the Indiana Department of Correction*

On August 21, 2008, Dewitt went to Gaddie Eye Center in Carrollton, Kentucky. He reported waking up 6-8 months ago with patches of gray or no vision at all. He also reported pain for the past 2-3 days. He was referred to Dr. Robert Williams, a specialist at Taustine Eye Center, for possible angle closure glaucoma and elevated pressure in his left eye. On August 22, 2008, Dewitt was seen by Dr. Williams. Dewitt reported having decreased vision in his left eye his whole life and 6-8 months ago he noted achiness and a foreign body sensation in his left eye. Dr. Williams prescribed Alphagan, Timolol and Travatan OS. Dr. Williams discussed with Dewitt the nature of angle-closure glaucoma and the risk to the right eye. Dr. Williams asked Dewitt to undergo peripheral iridotomy in the right eye, but Dewitt did not schedule the appointment at that time. Dr. Williams reported that Dewitt said he would call.

On November 10, 2008, Dewitt went to the Kentucky Eye Institute. He had end-state angle glaucoma of the left eye. He was prescribed Combigan and Travatan. On November 12, 2008, Dewitt returned to the Kentucky Eye Institute. The doctor noted that he had possible angle closure in the left eye. The Kentucky Eye Institute sent a letter to the Department for the Blind on November 18, 2008, stating that Dewitt was legally blind in his left eye from narrow angle glaucoma and that he ran the risk of the same thing happening to his right eye without laser peripheral iridotomy. In that letter, the physician recommended that Dewitt undergo laser surgery in both eyes in an effort to prevent any future narrow angle glaucoma attacks. On November of 2008, Dewitt applied for Social Security Disability Benefits, supported by a report from the Kentucky Eye Institute that he was legally blind in his left eye, that his right eye was normal with no remission, and that he had end-stage glaucoma in the left eye with poor prognosis.

On January 6, 2009, Dewitt returned to the Kentucky Eye Institute for iridotomy of his right eye. On January 14, 2009, Dewitt was a no-show for a follow up appointment. On January 20, 2009, Dewitt returned to the Kentucky Eye Institute. He reported no problems and received a prescription for Combigan, FML and Travatan.

On April, 14, 2009, Dewitt returned to the Kentucky Eye Institute and reported that his left eye hurt and his whole head hurt. He received a prescription for Combigan and Travatan. The Kentucky Eye Institute sent a letter to Department for the Blind of Kentucky dated April 14, 2009, stating that Dewitt had laser peripheral iridotomy of the right eye in an effort to save it from narrow angle glaucoma attacks. Dewitt's left eye remained in a chronic narrow angle situation with intra-ocular pressure in the range of 50 and they recommended a laser peripheral iridotomy of the left eye as well to relieve pressure.

*Dewitt's Second Incarceration*

Seven months later, in November of 2009, Dewitt re-entered the IDOC. On November 10, 2009, Dewitt was examined by Paige Brinegar, APN. Dewitt complained of headaches and he reported that he was diagnosed with glaucoma before coming back into prison, that he had surgery on his right eye in 2009, and that he needed surgery on his left eye. Dewitt was scheduled to see the eye doctor at Plainfield on November 13, 2009. On November 11, 2009, Dr. Gallien prescribed non-formulary drugs of Combigan GTTS, Travatan Eye Drops and Timolol eye drops after speaking with the Kentucky Eye Institute, who advised that these were the last medications Dewitt received. On November 17, 2009, Nurse Practitioner Brinegar received records from Kentucky Eye Institute. On November 19, 2009, Dewitt was rescheduled to see the eye doctor at Plainfield on December 2, 2009, for a pressure check, however, on that date, the

eye doctor was sick and could not make the appointment. Medical staff rescheduled the appointment for December 9, 2009.

On December 2, 2009, Dewitt was transferred to Putnamville. Dewitt was seen in the Chronic Care Clinic on January 4, 2010. On January 27, 2010, Dewitt submitted a Request for Healthcare to see the eye doctor. He claimed he was having exceptional irritation in his left eye from glaucoma. He thought his Travatan eye drops increased the irritation. He reported that the Timolol helped but it warned against its use for patients with COPD and asthma. He wanted to be prescribed something else.

On February 1, 2010, Dewitt was examined by Dr. Aaron Cunningham, the prison optometrist. Dewitt had end-stage glaucoma. Dr. Cunningham noted that the patient had concerns over COPD, so he discontinued the glaucoma medications for one month.

On March 8, 2010, Dr. Cunningham saw Dewitt and referred him to Wishard Hospital to evaluate Dewitt's end stage glaucoma in his left eye and to manage his discomfort. He noted that Dewitt's left eye was painful with corneal dessication and that he was on Travatan and Timolol in the left eye only.

On April 9, 2010, Dewitt was seen at Wishard Hospital in the Ophthalmology Clinic. Dewitt had painful end-stage angle closure glaucoma in the left eye from possible trauma. The ophthalmologist recommended medicated eye drops, which were provided at the prison. On April 12, 2010, Dr. Cunningham referred Dewitt to see a glaucoma specialist. He noted that Dewitt had a painful left eye due to narrow angle glaucoma with corneal hydrops. Dr. Cunningham also prescribed Alphagan Diamox Sequels and Dorzolmaide, which were recommended by Wishard Hospital.

On April 14, 2010, Dewitt returned to Wishard Hospital's Ophthalmology Clinic. Dewitt reported his ocular pain as "not bad." The ophthalmologist's plan was to try to decrease the pressure in Dewitt's left eye using medication, and if did not work, he might consider enuculear/evisceration (removal of the eye). The ophthalmologist noted that he did not recommend surgery or cryo for glaucoma.

On July 8, 2010, Dewitt was examined by Dr. Cunningham, the prison optometrist. On November 17, 2010, Dewitt submitted a Request for Healthcare to the eye doctor and that he wanted to have his left eye removed because the pain and irritation was unbearable and the eye drops made it worse.

On January 3, 2011, Dewitt saw Dr. Cunningham, who referred him back to Wishard Hospital for end stage glaucoma in the left eye with uncontrollable intraocular pressure. Dewitt was on the medication Alphagan and Trusopt. Dr. Cunningham noted that Dewitt had painful corneal hydrops from the high intraocular pressure and had considered enucleation (removal of the eye).

On January 28, 2011, Dewitt returned to the Wishard Hospital Ophthalmology Clinic. The Wishard Hospital ophthalmologist recommended several medicated eye drops including Trusopt, Alphagan, Travatan, Timolol, Prednisolone and Atropene. She further suggested that Dewitt consider enucleation, observe the right eye, and return in one month to check his intraocular pressure.

On February 5, 2011, Dewitt submitted a Request for Healthcare stating that his eye had not stopped hurting since his last Wishard Hospital appointment and he wanted surgery to remove his left eye. Medical staff responded to the request and informed him that an appointment was scheduled. On March 14, 2011, Dewitt saw Dr. Cunningham, who referred him

for an evaluation with a glaucoma specialist to discuss possible enucleation. On April 1, 2011, Dewitt returned to the specialist at Wishard Hospital. He reported that his pain was better and his vision was "well" in the right eye. The specialist told him to continue his eye drops.

On April 4, 2011, Dewitt saw the prison eye doctor again. Dr. Cunningham renewed Dewitt's medications. On June 15, 2011, Mr. Dewitt submitted a Request for Healthcare that the pain, irritation and burning in his left eye was constant no matter what eye drops he used. He claimed that he did not want his eye removed, but saw no other options. On June 30, 2011, Dewitt did not show up for his appointment with the prison eye doctor.

On July 11, 2011, Dr. Cunningham saw Dewitt and referred him for a glaucoma assessment for possible enucleation. In response to his referral, however, Dr. Mitcheff, the Regional Medical Director for Corizon, suggested an alternative treatment plan that Dewitt continue to use the medications suggested by Wishard Hospital because enucleation, or removal of the eye, was an extreme measure only to be used as a last resort. At that time, Dr. Mitcheff felt that Dewitt had not exhausted conservative measures to manage his pain and reduce intraocular pressure. Dr. Mitcheff suggested an alternative treatment plan of continuing on his pain medication and medicated eye drops as recommended by Wishard Hospital. This is the only referral submitted by one of Dewitt's treating physicians that did not meet insurance criteria.

As Regional Medical Director, Dr. Mitcheff hires independent contractor physicians, reviews prescriptions for non-formulary medications, reviews referrals for outside treatment, and makes alternative treatment suggestions to the treating physicians at the prisons. The course of treatment for a particular offender is decided by the providers at the prisons, including the physicians and nurse practitioners. If a provider prescribes a medication that is not on the company formulary or refers an offender for outside specialty treatment or testing, Dr. Mitcheff

reviews that prescription or referral to see if it meets insurance criteria, just like any other major health organization would do. If a provider's recommendation or referral does not meet insurance criteria, Dr. Mitcheff may recommend alternative treatment options, but the provider at the facility has the authority to proceed with the treatment he or she recommends, as the provider is the one caring for the offender and has to make the ultimate decision regarding what is medically necessary for the offender. As Regional Medical Director, Dr. Mitcheff does not make treatment decisions for inmates. Rather, he reviews recommendations from facility physicians and sometimes provides guidance and alternative treatment suggestions. Dr. Mitcheff never personally treated Dewitt. His only involvement with Dewitt's medical care was to review recommendations from the prison physicians regarding non-formulary medications or specialty referrals.

On August 29, 2011, Dewitt was examined by Dr. Cunningham and they discussed his treatment options. On September 11, 2011, Dewitt submitted a Request for Healthcare to Dr. Cunningham stating that the pain in his left eye was still severe. On September 13, 2011, Dewitt was a no show for nursing sick call. On September 23, 2011, medical staff informed Dewitt that he needed to come to the Health Care Unit to take his eye medication, but Dewitt did not want to do that because it interfered with his job. On September 25, 2011, Dewitt was a no show for his evening eye drops. On September 26, 2011, Dewitt was a no show for his appointment with Dr. Cunningham. On September 28, 2011, Dewitt signed a refusal to come to the health care unit for his eye drops.

On October 3, 2011, Dewitt was examined by Dr. Cunningham. Dewitt was a no show for his appointment with Dr. Cunningham on October 12, 2011. On October 13, 2011, Dewitt was examined by Dr. Gregory Haynes for left eye pain. Dewitt's left eye was watery at times and

he had headaches. The exam of the left eye showed a cloudy cornea. Dr. Haynes prescribed Mobic for pain and a low dose of Prednisone.

On November 6, 2011, Dewitt submitted a Request for Healthcare asking for different pain medication for his left eye because the Mobic did not help. On November 8, 2011, Dewitt submitted a Request for Healthcare regarding severe eye pain. On November 9, 2011, Dewitt was seen in nursing sick call and he reported that Mobic was not helping. The nurse referred him to a physician.

On November 10, 2011, Dewitt had an exam with Dr. Paul O'Brien for left eye pain. Dewitt reported bouts of acute stabbing pain to the left eye from chronic corneal hydrops. Dr. O'Brien noted that medical management options for relief of his left eye pain were exhausted. Dr. O'Brien therefore prescribed Vicodin for 7 days. On November 27, 2011, Dewitt submitted a Request for Healthcare asking for different pain medication for the severe pain in his left eye. On December 27, 2011, Dewitt submitted a Request for Healthcare regarding pain in his left eye and that he was having some vision problems in his right eye. On December 29, 2011, Dewitt was seen in nursing sick call for left eye pain. He was referred to a physician.

Dr. Naveen Rajoli began working at Putnamville on January 2, 2012. On January 4, 2012, Dewitt was examined by Jennifer Barnes, NP. She referred him to the prison eye doctor for evaluation of right eye vision and renewed Vicodin for left eye pain for 90 days.

On January 9, 2012, Dewitt was examined by Dr. Cunningham, who recommended changing Dewitt's pain medication from "as needed" to every evening. Dr. Rajoli examined Dewitt on February 14, 2012 in the Chronic Care Clinic. He advised Dewitt to use narcotic pain medication "as needed" because he did not want Dewitt to develop a tolerance or become addicted to his pain medication. On April 12, 2012, Dewitt submitted a Request for Healthcare

that the pain in his left eye increased when he laid down. He claimed that Vicodin helped and he wanted it refilled. On April 16, 2012, Dr. Rajoli renewed Vicodin for 90 days for left eye pain. The prison eye doctor, Dr. Cunningham, examined Dewitt on April 16, 2012. He recommended continued use of medications and referred Dewitt for evaluation of end-stage glaucoma of the left eye, pain management, and to monitor visual fields of the right eye.

On April 17, 2012, Dewitt was transferred to the Wabash Valley Correctional Facility ("Wabash"). Dr. Rajoli had no further involvement with Dewitt's medical care after that transfer. Dewitt's active medications were Vicodin, which was good until July 16, 2012, and his medicated eye drops, which were good until August 17, 2012.

On May 4, 2012, Dewitt submitted a Request for Healthcare and asked to talk to the doctor about pain management for his left eye. Dewitt was seen in nursing sick call on May 5, 2012. He complained of more pain in the left eye and that he was using more of his eye drops. The nurse scheduled him for doctor sick call.

On May 8, 2012, Dr. Joseph saw Dewitt in the Chronic Care Clinic. Dr. Joseph referred him to optometry. On May 25, 2012, Dewitt saw the prison eye doctor. It was noted that the referral for evaluation of eye pain and visual fields had been approved. Dewitt submitted a Request for Healthcare on June 28, 2012, stating that his eye drops were becoming less effective in controlling his eye pain and he requested that his pain medication be adjusted. He reported that he had been referred to an outside specialist 2-1/2 months ago, but had not been seen yet. Medical staff responded that he was being scheduled. Dewitt's Vicodin was not renewed in July, 2012 because he was being scheduled for laser surgery for his left eye, which would hopefully alleviate his pain. Offenders are not informed of the date and time of their outside medical appointments for security reasons.

Dewitt went to the Midwest Eye Institute for a glaucoma evaluation on July 5, 2012. The glaucoma specialist recommended surgery to reduce the intraocular pressure in Dewitt's left eye. On July 25, 2012, Dr. Joseph referred Dewitt for laser surgery of his left eye, which was recommended by the doctor at Midwest Eye Institute. At that time, it was determined that Dewitt had exhausted all conservative options to manage his pain and reduce intraocular pressure. Dewitt submitted a Request for Healthcare on July 29, 2012, stating that he needed his pain medication renewed and he also needed it adjusted per the specialist at Midwest. On August 3, 2012, Dr. Joseph examined Dewitt in the Chronic Care Clinic. Dewitt requested more Vicodin. Dr. Joseph noted that Dewitt looked comfortable and was not in any distress or in pain so she did not prescribe Vicodin. Dr. Jospeh instructed Dewitt to obtain analgesics from the commissary as needed.

Dewitt had surgery on his left eye on August 15, 2012, performed by specialists from the Midwest Eye Institute. Dewitt had a diode laser destruction of the ciliary body of the eye, which is a last resort procedure to reduce intraocular pressure (cyclophotocoagulation). Following surgery, Dewitt had a prescription for Vicodin from August 16, 2012, to August 18, 2012.

### B. Analysis

At the time relevant to Dewitt's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment=s proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison official to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (*overruled on other grounds in Hill v. Tangherlini,* No. 12-3447, 2013 WL 3942935 (7th Cir. Aug. 1. 2013)).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). The defendants do not dispute that Dewitt had an objectively serious medical condition.

As to the second element, "[t]o show deliberate indifference, [Dewitt] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King,* 680 F.3d at 1018-1019 (internal quotation omitted). "Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson,* 444 F.3d at 585 (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a

known risk.@ *Id.* (internal quotation omitted). AEven gross negligence is below the standard needed to impose constitutional liability.@ *Id.* (internal quotation omitted).

### *Defendant Corizon*

To recover against Corizon, Dewitt must show that his injury was the result of Corizon's "official policy or custom." *Rice ex rel. Rice v. Correctional Medical Services,* 675 F.3d 650, 675 (7th Cir. 2012). In his amended complaint, Dewitt alleges that Corizon has a policy of denying medical services to an offender if the date of request is within 90 days of his release date. Dewitt has presented no admissible evidence of such a policy. Rather, the record shows that if an offender has a short time left on his sentence, Corizon might not refer him to outside specialists if his condition is not urgent and can safely wait until he is released. This was never an issue with Dewitt. At the time of Dewitt's release from the IDOC in May, 2008, there were no recommendations or referrals to send him outside of the prison for any specialty appointments. Corizon is entitled to summary judgment as to the claim asserted against it.

### *Defendant Patty Wirth*

Dewitt alleges that defendant Wirth denied his request for medical services on March 23, 2008, which ultimately led to the loss of vision in his left eye. In March of 2008, while Dewitt was at a work release facility and requested to be seen by an optometrist, Plainfield was contacted. Defendant Wirth argues that the claim against her is barred by the statute of limitations and by the fact that she did not personally participate in Dewitt's medical treatment. The Court need not consider Dewitt's response that his claim against Wirth was not time-barred because of the continuing violation doctrine. Rather, the Court finds on the merits that Wirth was not deliberately indifferent to Dewitt's serious medical needs.

Wirth was not a medical provider. Wirth did not make any medical decisions regarding Dewitt and had no involvement with his medical care. She scheduled appointments. Wirth conveyed information on the phone that there was not an available appointment with the eye doctor on the date requested, May 13, 2008, and that there was not an available appointment until June. Generally speaking, the prison eye doctor was only available one day a month. There is no evidence that the information provided by Wirth concerning availability of appointments was false or otherwise improper. There is no evidence that Wirth did anything but perform her administrative job. There is no genuine issue of fact as to whether Wirth was deliberately indifferent to Dewitt's serious medical needs. Wirth is entitled to summary judgment as to the claim asserted against her.

*Defendant Dr. Rajoli*

In his amended complaint, Dewitt alleges that Dr. Rajoli acted with an attitude of indifference. Dewitt alleges that on February 14, 2012, Dr. Rajoli told Dewitt that Dr. Rajoli would never increase the dosage of his medications, even if his pain increased substantially. This allegation is not supported by admissible evidence. Even if it were, however, the record shows that Dewitt never did request that Dr. Rajoli increase his medication.

Dr. Rajoli was a physician at Putnamville beginning on January 2, 2012. He examined Dewitt on February 14, 2012. At that time Dr. Rajoli advised Dewitt to use narcotic pain medication only "as needed" because he did not want Dewitt to develop a tolerance or become addicted to the medication. On April 16, 2012, Dr. Rajoli responded to Dewitt's complaint of increased left eye pain by renewing his Vicodin prescription for 90 days. That was the entirety of Dr. Rajoli's care of Dewitt because Dewitt was transferred to another facility on April 17, 2012.

Dewitt has not presented any evidence, much less evidence sufficient to create a genuine issue of fact, showing that Dr. Rajoli acted with deliberate indifference toward Dewitt's medical needs. Dr. Rajoli did not refuse to renew Dewitt's pain prescription. He may have warned Dewitt of the dangers of becoming addicted to Vicodin, but this amounts to medical advice, not a refusal to provide. Dr. Rajoli is entitled to summary judgment as to the claim asserted against him.

### *Defendant Dr. Mitcheff*

Dewitt alleges that Dr. Mitcheff acted with deliberate indifference by refusing to authorize surgery and/or treatment for the pain Dewitt suffered. Dr. Mitcheff first argues that he did not participate in or have direct involvement with Dewitt's medical care. The Court finds, however, that Dr. Mitcheff was involved with Dewitt's treatment. As Regional Medical Director, Dr. Mitcheff was responsible for reviewing treatment requests such as prescriptions for non-formulary medications and referrals for outside treatment.

The only referral submitted by one of Dewitt's treating physicians that Dr. Mitcheff did not approve was the referral submitted by Dr. Cunningham, the prison optometrist, on July 11, 2011, to send Dewitt to be assessed for the removal of his left eye. It is Dr. Mitcheff's opinion that the removal of an eye is an extreme measure that should be used only as a last resort. At that time, Dr. Mitcheff believed that Dewitt had not exhausted conservative measures to manage his pain and reduce intraocular pressure. Therefore, Dr. Mitcheff suggested that the treatment plan recommended by Wishard Hospital, pain medication and eye drops, be continued. Dewitt did eventually, in August, 2012, have part of his left eye removed because he had by then exhausted all conservative options to manage his pain and reduce his intraocular pressure.

It is clear that Dewitt disagreed with Dr. Mitcheff's determination in July of 2011, but that does not necessarily mean that Dr. Mitcheff acted with deliberate indifference. *See*

*Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003) (mere disagreement with medical professionals about one's needs does not state a claim for deliberate indifference). There is no evidence that Dr. Mitcheff's decision to not approve the "last resort" surgery at that time was made recklessly. Rather, it was a reasonable exercise of his professional judgment. As recently as April of 2011, the glaucoma specialist at Wishard Hospital had recommended that Dewitt continue his eye drops.

Even if Dewitt had shown negligence or gross negligence on the part of Dr. Mitcheff or any other defendant, which he has not done, that would not be sufficient to survive summary judgment as to his claims of deliberate indifference. *See Lee v. Young,* 533 F.3d 505, 509 (7th Cir. 2008) ("negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense"). In addition, there is no evidence that the medical providers' actions fell below the applicable standards of care. Dr. Mitcheff is entitled to summary judgment as to the claim asserted against him.

### C. Summary

A court examines the totality of an inmate's medical care when determining whether defendants have been deliberately indifferent to his serious medical needs. *Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000). It is well-settled that while incarcerated, an inmate is not entitled to the best possible care or to receive particular treatment of his choice. *See Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Dewitt is "entitled to reasonable measures to meet a substantial risk of serious harm." *Id.*

The medical staff were responsive to Dewitt's requests for medical appointments. He was seen by prison eye physicians and he was referred to outside specialists in a timely manner. His condition was monitored and various prescriptions for pain and eye drops were provided.

Ultimately, when no other conservative course of action was recommended, he was sent to a specialist for surgery. The evidence supports a finding that the totality of care provided to Dewitt was reasonable.

It is clear that Dewitt has suffered from a serious, complex, and sometimes painful eye condition. No doubt he experienced frustration when he believed more or different treatment could or should have been provided while he was incarcerated. Nonetheless, Dewitt's allegations of deliberate indifference are not supported by admissible evidence. The sworn affidavits of the facts presented by the defendants are not contradicted. Dewitt's eye condition was reasonably monitored and treated by the medical staff at each prison. These circumstances do not rise to the level of deliberate indifference.

## IV.  Conclusion

Dewitt has not identified a genuine issue of material fact as to his claims that the defendants were deliberately indifferent to his serious medical needs. Therefore, the defendants' motion for summary judgment [Dkt. 59] must be **granted.** Judgment consistent with this Entry and with the Entry of August 2, 2013, shall now issue.

**IT IS SO ORDERED.**

Date: 08/07/2013

Distribution:

Electronically Registered Counsel

Leonard Dewitt
DOC #990290
Indianapolis Re-Entry Educational Facility
401 N. Randolph Street
Indianapolis, IN 46201

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana